JANE CHISLER *v*. ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT

SUPERIOR COURT        JUDICIAL DISTRICT        FILE No. 27591
                         OF WINDHAM

Memorandum filed June 29, 1984

*Connecticut Legal Services,* for the plaintiff.

*Donald E. Wasik,* assistant attorney general, for the defendant.

BRENNEMAN, J. Having exhausted her 26 weeks of state unemployment compensation benefits by the week ending May 21, 1983, this plaintiff applied for extended benefits under § 31-232b of the General Statutes, and a federal supplemental compensation (hereinafter FSC) claim was established for her effective May 22, 1983. At the end of the third week, however, further benefits were denied on the ground that she "has not made a sustained and systematic effort for work under S.C. laws." (Work search factfinding report dated June 14, 1983.) Following a hearing on July 19, 1983, the appeals referee sustained the denial, concluding that contact with four employers on a single day during the week ending June 4, 1983, did not meet the eligibility requirements: "While the claimant has contacted a sufficient number of employers, she has failed to make contacts during the majority of the week [sic] at issue." This

decision was subsequently affirmed by the employment security board of review on August 18, 1983, and a timely appeal to this court followed.

This appeal raises three questions:

(1) Whether lack of transportation must be considered in determining whether a claimant has made the "sustained and systematic effort" required for eligibility under § 31-232*l* (d);

(2) Whether the administrator's requirement that claimants make a minimum of four employer contacts over a minimum of three separate days in the course of any benefit week may be applied rigidly to every claimant, regardless of the particular attributes of the claimant's situation, such as availability of public transportation, density of employer population, and level of economic activity in the area;

(3) Whether, on this record as a whole, the claimant is entitled to benefits after June 14, 1983.

### AVAILABILITY OF TRANSPORTATION

The defendant administrator claims that lack of transportation, being a "personal responsibility" of a claimant, may never be considered in evaluating efforts to find employment since otherwise "scores of claimants could collect benefits without making any efforts simply by alleging no means of transportation." The parties agree that the claimant had read and acknowledged understanding a "Rights and Responsibilities Work Sheet" which instructs all claimants: "Generally, you must actively seek work during a minimum of three working days each week and you must make a minimum of four new employer contacts each week." Presumably the word "generally" was used deliberately to avoid the rigid application of a fixed number of days or employers for every claimant in the state. Such inflexibility, if applied, would clearly violate the guide-

lines of the United States Department of Labor as set out in its General Administrative Letter No. 22-81, dated May 12, 1981. "A systematic search is conducted with consideration of labor market conditions and local hiring practices. What constitutes actively seeking work is a question which much [sic] be resolved on a case by case basis, for no one set of rules can be compiled to cover every individual claim in every situation."

The same letter requires states to establish standards on the basis of local knowledge of the labor market, not statewide but "for the various labor market areas within the state." The federal instructions make it plain that what constitutes "systematic and sustained effort" will vary "by labor market areas within a state," depending upon, among other factors, "the availability of transportation."

It is thus clear that transportation, when offered by a claimant as a reason for not adhering to the "general" guidelines of 3-days/4-employers, must be considered by the administrator. Refusal to consider the availability of transportation in the context of this claimant's geographical location constitutes error.

## RIGID APPLICATION OF GUIDELINES

Both the administrator and the appeals referee regarded the state guidelines of 3-days/4-employers as rigidly applicable, without regard to local conditions and circumstances of this claimant. Neither the administrator nor the referee even alluded to the availability of public transportation in Danielson, the density of population in Windham County, the location of potential employers, the level of economic activity in this most depressed and underpopulated corner of the state, or the reason why this claimant had no driver's license. Instead, the 3-day/4-employer standard was inflexibly applied. Although the referee admitted the number of employers contacted during the week ending June 4,

1983, would have satisfied the guidelines if spread out over three days, because they were all made in the single day when a family member provided her with transportation, her claim must fail. The rigid application of these "general" guidelines in disregard of local conditions was therefore error.

Even if rigid application of such guidelines were permitted, the referee misread or misunderstood the record. The evidence shows that the claimant contacted four employers on May 31, 1983, and two other employers on June 2, 1983. The referee's conclusion that she made only four employer contacts in a single day for the week ending June 4, 1983, is clearly error.

## ELIGIBILITY FOR FSC BENEFITS AFTER WEEK ENDING JUNE 11, 1983

The decision of the referee, despite the errors delineated above, must be affirmed. The administrator on June 14, 1983, had specifically found "in week of June 11, 1983 none [employer contacts] were made." In her decision the referee did not allude to the week ending June 11, 1983, but the record is clear from the employer contact sheet that no contacts were made of any kind between June 2 and June 13, 1983. This claimant was apparently eager to work, as evidenced by her willingness to work any shift, to do any kind of work, to earn as little as half her previous pay, and claimed no physical impediment to employment. When employed she had been able to arrange transportation with a co-worker and would presumably do the same if she found another job. It is also unrefuted that she had no driver's license, was dependent on family members or friends to provide transportation, and the court notices judicially that she lived in an economically depressed, sparsely populated area of the state. Nonetheless, given all of these factors, the total absence of any attempt to make contact with any employer for

the entire week ending June 11, 1983, could reasonably have been found to be a failure to conduct "a systematic and sustained effort to obtain work." To find otherwise might, indeed, invite the spectre raised in the administrator's brief of "scores of claimants [who] could collect benefits without making *any* efforts simply by alleging no means of transportation." (Emphasis added.) While the rigid application of the 3-day/4-employer guideline has been found to be error, it is not error, under applicable federal and state law, to require some showing of employer contact for each week in which FSC benefits are claimed.

For this reason the decision of the board of review is affirmed.

The motion for judgment on the record is granted.